IIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| RICHARD J. RUHE,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK and MARIA KRALL,<br><br>Defendants. | Case No. 22-cv-00555-DKW-RT<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Richard Ruhe alleges that Defendants Frank and Maria Krall abducted his minor daughter in La Habra, California in January 2021 and made false and disparaging comments about him to mutual acquaintances and online. Dkt. Nos. 1, 21. As a result, Ruhe asserts claims for tortious interference with parental rights, negligent and intentional inflictions of emotional distress, and slander. Ruhe is a resident of Hawaiʻi, but all of the alleged tortious acts occurred in California.

Before the Court is the Kralls' Motion to Dismiss ("MTD"), contending both that (1) the Court lacks personal jurisdiction over the Kralls and (2) venue is improper. Dkt. No. 12. Because none of the alleged events occurred in this District, the Court agrees that venue is improper. The MTD is therefore GRANTED on that basis. Further, in order to afford Ruhe the discretion whether

1

or not to re-file his case in the proper California district, the Court elects to dismiss the case, rather than transfer it, pursuant to 28 U.S.C. § 1406.[1]

## RELEVANT FACTUAL ALLEGATIONS[2]

Ruhe alleges that he and his minor daughter, over whom he has full custody, lived in Southern California until 2015 when they moved and became permanent residents of Hawaiʻi. Dkt. No. 21 at 2. Prior to their move to Hawaiʻi, Ruhe knew the Kralls as leaders in his Southern California church community. *Id.* Ruhe's daughter was also friendly with the Kralls' daughter. *Id.* at 1. The Kralls were aware that Ruhe and his daughter moved to Hawaiʻi in 2015, having given them a ride to the airport for their flight and later exchanged phone calls, text messages, letters, and souvenirs over several years. *Id.* at 2.

Around October 2020, Ruhe's daughter "was transported or trafficked to Southern California" by a "non-family member adult who [wa]s involved in drugs and illicit behavior." *Id.* at 1.[3] In late December 2020, Ruhe traveled to Southern

---

[1] When deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(2) and/or 12(b)(3), like this one, a district court must take all plausible allegations in the complaint as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

[2] Not all of the allegations described herein appear in Ruhe's Complaint, Dkt. No. 1. After reviewing the completed briefing on this matter—to include the MTD and Ruhe's MTD opposition brief, Dkt. Nos. 12, 17—the Court ordered Ruhe to respond to a series of questions intended to aid the Court in determining whether it possessed personal jurisdiction over the Kralls and whether venue was proper in this District. Dkt. No. 20. Ruhe responded on April 17, 2023. Dkt. No. 21. In order to avoid requiring Ruhe to file a formal amended complaint, and solely for purposes of today's Order, the Court proceeds as though the allegations contained in Ruhe's April 17, 2023 response are incorporated into his pleadings.

[3] This unnamed "non-family member adult" is not a party to this action.

California to attempt to find his daughter. *Id.* He called the Kralls, seeking help in this endeavor, and visited their residence in La Habra, California on December 31, 2020. *Id.* During that visit, Frank Krall told Ruhe he "did not know where [Ruhe's daughter] was," but agreed to ask his own daughter to see what she could find out. *Id.* On January 1, 2021, Ruhe returned to the Kralls' La Habra residence, where the Kralls repeated that they did not know the whereabouts of Ruhe's daughter. *Id.* at 2. Ruhe "explained [to the Kralls] that [his daughter] was in danger," and he "asked to be notified if the [Kralls] learned anything." *Id.*

Ruhe now believes that the Kralls had abducted and were unlawfully harboring his daughter at their La Habra home without his consent during this time. *Id.* at 1–2; Dkt. No. 1 at 5–6 (alleging the Kralls sheltered and concealed the daughter in La Habra without Ruhe's consent). Ruhe alleges that Frank Krall is "an Elder in a splinter church group [with] less than 3,000 members world-wide[,] which hold[s] particular beliefs such as [that] a father who remains unmarried has 'broken Covenant' and therefore lost all rights[.]" Dkt. No. 21 at 2; Dkt. No. 1 at 5–6 (alleging the Kralls "[m]isused [their] ministerial capacity to disparage [him] and induce [his] daughter to cut communication with [him] at least two months before January 1, 202[1] and continuing"). Ruhe further alleges that the Kralls confessed to the abduction in the presence of other spiritual leaders in their church

3

community, and he "maintains the informed belief that the [Kralls] continue to harbor her" in Southern California. *Id.*

Additionally, Ruhe claims that the Kralls made slanderous comments about him to mutual acquaintances and in various online forums:

> The Kralls stated to the "Spiritual Council" and Pastor Jeff Munive, as well as other individuals observing electronically world-wide, that Ruhe was "not the Legal Father" of his daughter [and] that he, Frank Krall, "know[s]" Ruhe lost custody by some undisclosed harmful act.
>
> Several comments were [also] made from Instagram account "savage.ragg0," later learned to be operated by the Kralls' son. The son's account was used to send direct messages to Ruhe by the Kralls. This agent made comments on threats viewed by Art Gallerist's, and people in Ruhe's industry. "Your Art sucks," "he's on drugs," "he took too many drugs in his 20's," etc.
>
> [The s]tatements were made between Jan. 2, 2021 and August 20, 2021 (8:34 HST).
>
> [The statements were made i]n person, in electronic meeting, on Instagram and Facebook, and by telephone.
>
> [The statements were made to] Jeff Munive, members of the "Spiritual Council," and various members of the RCUS world-wide, along with Instagram and Facebook subscribers.

Dkt. No. 21 at 3 (cleaned up); *see also* Dkt. No. 1 at 5–6 (alleging the Kralls "disparag[ed Ruhe] to his daughter and others including church leadership"; and "knowingly and maliciously misstated [his] custody and parental relationship to others and in writing").

## **PROCEDURAL BACKGROUND**

On December 30, 2022, Ruhe filed his Complaint in this Court, asserting claims for tortious interference with parental rights, negligent and intentional inflictions of emotional distress, and slander. Dkt. No. 1 at 1. Ruhe also applied for *in forma pauperis* status, which this Court granted on January 19, 2023. Dkt. Nos. 3, 6.

On February 1, 2023, the Kralls filed the instant MTD, contending that (1) this Court's exercise of personal jurisdiction over them would violate the U.S. Constitution and Hawai'i state law[4] because the Kralls lack minimum contacts with the District of Hawai'i, such that the exercise of jurisdiction over them would violate traditional notions of fair play and substantial justice, and (2) venue does not lie in the District of Hawai'i because the Kralls do not reside in Hawai'i and none of the events giving rise to Ruhe's claims occurred in this District. Dkt. No. 12. Additionally, they ask the Court to dismiss the case, instead of transferring it to another district, in the interests of justice, pursuant to 28 U.S.C. § 1406.[5]

---

[4] Federal courts apply the laws of personal jurisdiction of the states in which they sit. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). Hawai'i's long-arm statute, which defines the extent to which Hawai'i courts may exercise personal jurisdiction over individuals, is coextensive with the limits of constitutional due process. *See* Haw. Rev. Stat. §§ 418-6, 634-35, 634-35(a)(1); *Cowan v. First Ins. Co. of Haw.*, 608 P.2d 394,399 (Haw. 1980). The Court also notes that when a non-resident defendant moves to dismiss a case for lack of personal jurisdiction, it is the plaintiff's burden to establish jurisdiction. *Schwarzenegger*, 374 F.3d at 800.

[5] The principal reason given in the Kralls' MTD for dismissal, as opposed to transfer, was that the statute of limitations on Ruhe's claims had expired. Dkt. No. 12 at 23–24. At the time the MTD was filed, Ruhe had alleged that the pertinent events took place on January 1, 20*20, see* Dkt. No.

On February 24, 2023, Ruhe opposed the MTD, claiming, with regard to personal jurisdiction, that he has "pleaded conduct which creates a substantial connection with Hawaiʻi." Dkt. No. 17 at 2. He contends that the Kralls' actions in California were "directed at the District of Hawaiʻi" because the Kralls intentionally and knowingly abducted a Hawaiʻi resident and deprived her of her Hawaiʻi-based home and family life. *Id.* With regard to venue, Ruhe contends that venue lies in this District because the Kralls' actions resulted in his injury here. *Id.* ("Filial as well [as] Material harm has been caused here."); Dkt. No. 21 at 3 ("The harm felt from the events Reputationally, Financially, Familially, and Emotionally occurred in the District of Hawaiʻi."); Dkt. No. 17 at 3 (stating that the District of Hawaiʻi offers him "the last best hope of justice for [causing his] alienation of affection"). He admits, however, that none of the "precise events" occurred in this District. Dkt. No. 21 at 3.

No reply brief was filed. The Court elected to decide the matter without a hearing pursuant to LR 7.1(c), *see* Dkt. No. 18, and this Order follows.

---

1, in which case his filing in December of 2022 would have exceeded Hawaiʻi's two-year tort statute of limitations. Ruhe has since clarified that the events took place on and after January 1, 20*21*. Dkt. No. 21. Therefore, as this Court is incorporating Dkt. No. 21 into Ruhe's pleadings for the limited purposes of this Order, *see supra* at 2 n.2, the relevant statutes do not appear to have expired, and the Court declines to address the argument further.

**DISCUSSION**

**I.     Venue**

28 U.S.C. § 1391(b)(1)–(2) provides that federal district courts may only preside over cases for which venue lies.  Venue is proper (1) in any judicial district in which any defendant resides, as long as all defendants are residents of the same state in which the district is located; or (2) in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)–(2).[6]

Under these standards, venue is clearly improper here.  The Kralls do not reside and have never resided in Hawaiʻi, and Ruhe concedes that *none* of the events giving rise to his claims occurred in the District of Hawaiʻi.  *See* Dkt. No. 21 at 3.  Even though, as Ruhe claims, the Kralls' alleged actions harmed him here, *see* Dkt. Nos. 17 at 2, 21 at 3, this—by itself—is not enough to satisfy Section 1391.  Thus, this action must be either dismissed or transferred to the proper forum.  *See* 28 U.S.C. § 1406; *United States v. Hudson*, 11 U.S. 32, 33 (1812) (holding that, as courts of limited jurisdiction, Article III courts may only operate to the extent authorized by Congress).[7]

---

[6] If neither Section 1391(b)(1) nor 1391(b)(2) applies, then venue exists in "any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. Section 1391(b)(3).

[7] For purposes of this Order, the Court *assumes* that the exercise of personal jurisdiction over the Kralls would not offend constitutional due process.  And taking Ruhe's allegations to be true, there is reason to do so.  There is significant recent precedent instructing that a plaintiff's own

## II. Dismissal or Transfer

Under 28 U.S.C. § 1406, if a case is incorrectly filed in a district in which venue does not lie, "the wrong [] district shall dismiss, or if it be in the interest of justice, transfer such case to any district [] in which it could have been brought." The decision to dismiss or transfer lies in the discretion of the district court.

---

connections to a forum state are insufficient to establish specific personal jurisdiction over a defendant. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . [While] a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties, [] a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."); *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1041 (9th Cir. 2022) ("*Walden* requires the defendant to have ties to the forum . . . apart from simply knowing the plaintiff has ties to the forum."); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) ("In *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts.").  However, the allegations here show that the Kralls themselves had sufficient contacts with Hawaiʻi *beyond* their knowledge that Ruhe had strong forum connections and that the harm from their actions would be felt in Hawaiʻi.  For example, they knowingly and actively deprived their Hawaiʻi-resident abductee of her Hawaiʻi-based home and family life.  In this Court's view, that goes beyond knowledge of the *plaintiff's* forum connections and constitutes a choice to expressly aim or purposefully direct their *own* actions toward this State.  *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (explaining that, "[i]n tort cases," specific jurisdiction requires that the defendant "purposefully directs his activities at the forum state," by "(1) commit[ing] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state") (internal quotation marks and citation omitted); *Axiom Foods*, 874 F.3d at 1069 ("Where [] a case sounds in tort, we employ the purposeful direction test."); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'") (citation omitted).  As another example, the Kralls expressly aimed disparaging Internet comments toward Ruhe, intending that their comments would reach him and others who knew him in this State.  By doing so, they "'reached out beyond' their State and into another." *See Walden*, 571 U.S. at 285 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)); *Mavrix Photo, Inc. v. Brand Techns., Inc.*, 647 F.3d 1218, 1226–27, 1231 (9th Cir. 2011) (explaining that "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed," but where a posting on "a website with national viewership and scope" particularly "appeals to . . . an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state").

*Costlow v. Weeks*, 790 F.2d 1486, 1487 (9th Cir. 1986).[8]  In order to decide whether the interest of justice calls for transfer instead of dismissal, a court should examine the merits of the plaintiff's case.  *See King v. Russell*, 963 F.2d 1301, 1304–05 (9th Cir. 1992).  For example, the court may consider "whether the relevant statute of limitations has expired."  *Daniels v. Nationwide Gen. Ins. Co.*, 2022 WL 3228144, at *2–3 (D. Haw. Aug. 10, 2022) (quoting *Grain Millers, Inc. v. Pac. Flexpack, Co.*, 2008 WL 550124, at *2 (D. Or. Feb. 26, 2008)).  A court may also consider "whether judicial economy would be promoted, whether the action would be re-filed if the case were dismissed, and the relative injustice imposed on the plaintiff and defendant."[9]  *Id*.

Here, the Court elects to dismiss this case, rather than transfer it to the appropriate California venue.  It is not apparent from Ruhe's filings that he will re-file and litigate his case in a district thousands of miles away from his home.  *See* Dkt. No. 17 at 3 (stating his strong preference for this District and that the District of Hawaiʻi offers him "the last best hope of justice for [causing his] alienation of affection"); Dkt. No. 3 (seeking *in forma pauperis* status).  The cost of doing so,

---

[8] "[T]he Ninth Circuit has apparently adopted the position that a court should dismiss a case absent a positive showing on the part of the movant [requesting transfer] that a transfer of the case would be in the interest of justice." *Big Island Yacht Sales, Inc. v. Dowty*, 848 F. Supp. 131, 134 (D. Haw. 1993) (citing *Costlow*, 790 F.2d at 1486).

[9] The Court notes that a district court may transfer a case to another district even if it lacks personal jurisdiction over the defendants. *See Froelich v. Petrelli*, 472 F. Supp. 756, 758–59 (D. Haw. 1979) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962)).

particularly for an IFP-qualified litigant, may be prohibitive.  Therefore, to afford Ruhe the greatest amount of flexibility and discretion moving forward, the Court dismisses this case and allows him the opportunity to decide what to do next.  If Ruhe chooses not to bring and pursue this case in California, no affirmative action is required on his part; he may simply do nothing.  On the other hand, if Ruhe does choose to re-file, the Court's decision here allows him to do just that without prejudice.

## **CONCLUSION**

As explained herein, the Motion to Dismiss, Dkt. No. 12, is GRANTED, and Ruhe's claims are DISMISSED WITHOUT PREJUDICE on the grounds of improper venue.

IT IS SO ORDERED.

DATED: April 26, 2023 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*Richard J. Ruhe v. Frank and Maria Krall*; Civil No. 22-00555 DKW-RT;
**ORDER GRANTING MOTION TO DISMISS**